UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Rashid Mohamed Sadi, *et al*.,

        Plaintiffs,

v.                                        Case No.: 15-11314

Barack Obama, President of the                Honorable Sean F. Cox
United States, in his official capacity,
*et al*.,

        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. #22), DENYING AS MOOT PLAINTIFFS' MOTION FOR DECLARATORY AND INJUNCTIVE RELIEF (Doc. #9), AND DISMISSING PLAINTIFFS' COMPLAINT**

Since at least March of 2011, the country of Yemen has been under a Travel Warning, issued by the United States Department of State ("State Department"), due to ongoing "terrorist activities and civil unrest."[1]  On February 11, 2015, the State Department suspended embassy operations in Yemen and evacuated U.S. Embassy staff from their office in Sana'a, Yemen.

On April 3, 2015, the State Department updated its Yemen Travel Warning, noting that "[t]he level of instability and ongoing threats in Yemen remains severe."[2]  The State Department explained that, at that time, there were "no plans for a U.S. government-coordinated evacuation of U.S. citizens" from Yemen.

In this action, Plaintiffs allege that they are United States citizens or permanent legal

---

[1] March 6, 2011 Yemen Travel Warning, U.S. Embassy to Yemen, *available at* http://yemen.usembassy.gov/twy.html.

[2] April 3, 2015 Yemen Travel Warning, U.S. Embassy to Yemen, *available at* http://yemen.usembassy.gov/tw4315.html.

residents, are of Yemeni national origin, and are currently stranded in Yemen. Plaintiffs claim that President Barack H. Obama, Secretary of State John F. Kerry, and other United States government officials (collectively, "Defendants") are unlawfully refusing to implement evacuation efforts for U.S. citizens in Yemen despite the swiftly deteriorating conditions there, and despite the fact that the United States has carried out evacuation missions in other countries under similar circumstances. Plaintiffs seek, *inter alia*, an injunction "requiring Defendants to coordinate the emergency evacuation of Plaintiffs and U.S. citizens in Yemen . . . ." (Compl., Doc. #1 at p. 28).

This matter is before the Court on Plaintiffs' Emergency Motion for Preliminary and/or Permanent Injunction, and Mandamus and Declaratory Relief (Doc. #9), and Defendants' Motion to Dismiss (Doc. #22). The motions have been fully briefed by the parties and the Court heard oral argument on Defendants' Motion to Dismiss on June 3, 2015. Because the Court finds that Plaintiffs' Complaint raises nonjusticiable political questions, the Court shall GRANT Defendants' Motion to Dismiss, DENY AS MOOT Plaintiffs' Motion, and DISMISS Plaintiffs' Complaint.

## BACKGROUND

### A.    Factual Background

Plaintiffs in this action are thirty-six (36) United States citizens and one (1) United States permanent legal resident who are currently in Yemen. Plaintiffs allege that "[a] coalition of countries led by Saudi Arabia have launched a military campaign against the Houthis, a militia group from northern Yemen . . . ," and that Saudi Arabia has imposed a no-fly zone and is in control of air space over Yemen. (Compl. at ¶¶ 1–3). Plaintiffs claim that they, along with approximately 55,000 other American citizens, are stranded in Yemen "due to Saudi Arabia's no-fly zone and hijacked main roads." (Compl. at ¶ 9). Plaintiffs assert that, despite the unstable and dangerous conditions

2

there, the State Department has refused to coordinate an evacuation effort to remove them and other endangered U.S. citizens from Yemen.

**B.    Procedural Background**

Plaintiffs filed their "Complaint for Emergency Injunctive, Mandamus and Declaratory Relief" on April 9, 2015.  (Doc. #1).  In their Complaint, Plaintiffs pleaded four causes of action:

> Count I:    Violation of the Fifth Amendment to the United States Constitution;
>
> Count II:   Unlawful Agency Action in Violation of the Administrative Procedure Act, 5 U.S.C. §§ 702, 706;
>
> Count III:  Writ of Mandamus; and
>
> Count IV:   Declaratory Relief.

(Compl., Doc. #1).  In their Prayer for Relief, Plaintiffs request:

> 1.    A declaratory judgment that finds that Defendants have failed to fulfill their duty to Plaintiffs by refusing to protect them and coordinate their evacuation from Yemen;
>
> 2.    An injunction that requires Defendants to coordinate the emergency evacuation of Plaintiffs and American citizens in Yemen to the extent practicable as soon as practicable;
>
> 3.    An award of attorneys' fees, costs, and expenses of all litigation, pursuant to 28 U.S.C. § 2415; and,
>
> 4.    Such other and further relief as the Court may deem just and proper.

(Compl. at 28).

As authority for their requested relief, Plaintiffs cite two main sources: Executive Order 12656, and a Memorandum of Agreement ("MOA") between the Departments of State and Defense.  (Doc. #1 at 6–8).  Executive Order 12656 provides, in pertinent part:

> **Sec. 502.**  *Support Responsibilities.*  The Secretary of Defense shall:

. . . .

(2) Advise and assist the Secretary of State and the heads of other Federal departments and agencies, as appropriate, in planning for the protection, evacuation, and repatriation of United States citizens in threatened areas overseas . . . .

**Sec. 1301.**  *Lead Responsibilities*.  In addition to the applicable responsibilities covered in Parts 1 and 2, the Secretary of State shall:

. . . .

(2) Prepare to carry out Department of State responsibilities in the conduct of the foreign relations of the United States during national security emergencies, under the direction of the President and in consultation with the heads of other appropriate Federal departments and agencies, including, but not limited to:

. . . .

(f) Protection or evacuation of United States citizens and nationals abroad and safeguarding their property abroad, in consultation with the Secretaries of Defense and Health and Human Services . . . .

Exec. Order No. 12656, 53 FR 47491, 47498, 47503–04 (Nov. 18, 1988).  Executive Order No. 12656 was amended by former President William J. Clinton on February 9, 1998 to include section 501(16).  Section 501(16) now provides that the Secretary of Defense shall,

[s]ubject to the direction of the President, and pursuant to procedures to be developed jointly by the Secretary of Defense and the Secretary of State, be responsible for the deployment and use of military forces for the protection of United States citizens and nationals and, in connection therewith, designated other persons or categories of persons, in support of their evacuation from threatened areas overseas.

Exec. Order. No. 13074 (Amendment to Executive Order 12656), 63 FR 7277 (Feb. 9, 1998).

The July 14, 1998 MOA between the Departments of State and Defense provides, in pertinent part:

The parties to this memorandum of agreement wish to set out their agreement concerning their respective roles and responsibilities regarding the protection and evacuation of U.S. citizens and nationals and designated other persons from

4

threatened areas overseas.

**A.     Policy Objectives.**

In the event of an emergency abroad affecting the safety of U.S. citizens, it is the policy of the United States Government – to:

1.     Protect U.S. citizens and nationals and designated other persons, to include, when necessary and feasible, their evacuation to and welfare in relatively safe areas.

2.     Reduce to a minimum the number of U.S. citizens and nationals and designated other persons subject to the risk of death and/or seizure as hostages.

3.     Reduce to a minimum the number of U.S. citizens and nationals and designated other persons in probable or actual combat areas so that combat effectiveness of U.S. and allied forces is not impaired.

(MOA, Doc. #5).

On April 21, 2015, Plaintiffs filed an Ex Parte Emergency Motion for Declaratory Judgment, Preliminary and Permanent Injunction, and Writ of Mandamus. (Doc. #6). This Court *sua sponte* issued an Order denying Plaintiffs' motion, noting that Defendants had not yet been served and that, pursuant to Federal Rule of Civil Procedure 65, a district court may issue a preliminary injunction only on notice to the adverse party. (Order, Doc. #7).

On April 22, 2015, counsel for all Defendants filed an appearance. On that same date, Plaintiffs re-filed their emergency motion for injunctive, mandamus, and declaratory relief. (Doc. #9). Thereafter, this Court held a status conference to set briefing and hearing dates regarding Plaintiffs' motion. Defendants' response to Plaintiffs' motion was ordered due on or before May 11, 2015. (Order Setting Dates, Doc. #19).

On May 11, 2015, as ordered, Defendants filed a Response to Plaintiffs' motion. (Defs.'

Resp., Doc. #21).  Along with their Response, Defendants also filed a Motion to Dismiss Plaintiffs' Complaint.  (Defs.' Mo. to Dismiss, Doc. #22).  This Court ordered Plaintiffs to respond to Defendants' motion on or before May 19, 2015, and Defendants to file any Reply by May 26, 2015. (Order Setting Add'l Dates, Doc. #23).  Plaintiffs responded to Defendants' motion, (Pls.' Resp., Doc. #25), and Defendants filed a Reply.  (Defs.' Reply, Doc. #26).

## STANDARD OF REVIEW

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and must accept all the factual allegations contained in the complaint as true.  *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).  "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

In order to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' complaint need contain only "enough facts to state a claim for relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 557. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

6

## ANALYSIS

**1)      The Court finds that Plaintiffs' Complaint raises nonjusticiable political questions.**

Defendants argue that this Court should dismiss all of Plaintiffs' claims because they raise nonjusticiable political questions.  (Defs.' Mo., Doc. #22 at 6).  This Court agrees.

Justiciability is a jurisdictional issue.  "[J]usticiability doctrines determine which matters federal courts can hear and decide and which must be dismissed."  Erwin Chemerinsky, *Federal Jurisdiction* 42 (6th ed. 2012).  "Justiciability is an analytical approach that has been developed to identify appropriate occasions for judicial action, both as a matter of defining the limits of the judicial power created by Article III of the Constitution, and as a matter of justifying refusals to exercise the power even in cases within the reach of Article III."  *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1146 (6th Cir. 1975) (internal quotation marks and citation omitted).  To denote something as "nonjusticiable" is to say that it is "inappropriate[] . . .  subject matter for judicial consideration."  *Baker v. Carr*, 369 U.S. 186, 200 (1962) (alterations in original).

Issues of justiciability include "the prohibition against advisory opinions, standing, ripeness, mootness, and the political question doctrine."  *Id.*  These doctrines support the conservation of judicial resources, maintain the separation of powers among the three branches of our government, "improve judicial decision making by providing the federal courts with concrete controversies best suited for judicial resolution," and "promote fairness, especially to individuals who are not litigants before the court."  Chemerinsky, *supra* at 43–44.

As mentioned, the political question doctrine falls within the purview of justiciability analysis.  *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 44 (D.D.C. 2010).  "The nonjusticiability of a political question is primarily a function of the separation of powers."  *Baker*, 369 U.S. at 210.  "The

7

political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Amer. Cetacean Soc.*, 478 U.S. 221, 230 (1976). "The Judiciary is particularly ill suited to make such decisions, as 'courts are fundamentally underequipped to formulate national policies or develop standards for matters not legal in nature.'" *Id.* (quoting *U.S. ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1379 (D.C. Cir. 1981)).

"The precise contours of the political question doctrine remain murky and unsettled." *Al Aulaqi*, 727 F. Supp. 2d at 44 (internal citation and quotation marks omitted). Nevertheless, *Baker v. Carr*, 369 U.S. 186 (1962) is the oft-quoted, authoritative United States Supreme Court case concerning the political question doctrine. Jesse H. Choper, *The Political Question Doctrine: Suggested Criteria*, 54 Duke L.J. 1457, 1458 (2005) ("The political question doctrine . . . has been most ambitiously, and authoritatively, defined by the Supreme Court in *Baker v. Carr* . . . ."); *see also* Wright & Miller, Fed. Prac. & Proc. § 3534 (3d ed. 2008) ("By far the closest approach to authoritative delineation of the factors separating judicial from political power is found in the classic legislative apportionment opinion in Baker v. Carr.").

> In [*Baker v. Carr*], the Supreme Court identified six factors to distinguish a political question that is nonjusticiable:
>
> > [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one

8

question.

*Biton v. Palestinian Interim Self-Gov't Auth.*, 412 F. Supp. 2d 1, 6 (D.D.C. 2005) (quoting *Baker*, 369 U.S. at 217).  "The factors are probably listed in descending order of both importance and certainty." *Vieth v. Jubelirer*, 541 U.S. 267, 278 (2004) (citations and quotations omitted).  "[I]n order for a case to be non-justiciable, the court 'need only conclude that one factor is present, not all." *Al-Aulaqi*, 727 F. Supp. 2d at 44 (quoting *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005)).  Application of the political question doctrine "must be made on a 'case-by-case' basis." *Schroder v. Bush*, 263 F.3d 1169, 1174 (10th Cir. 2001) (quoting *Baker*, 369 U.S. at 211).  "Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for nonjusticiability on the ground of a political question's presence." *Baker*, 369 U.S. at 217.

Regarding the second *Baker* factor—"lack of judicially discoverable and manageable standards for resolving" the issue(s)—Defendants argue that "there simply are no judicially manageable standards by which the Court could assess whether the current situation in Yemen requires the evacuation of U.S. citizens there . . . ."  (Defs.' Mo. at 10).  Defendants maintain that "there are no statutory or regulatory provisions by which a Court may determine when evacuation is appropriate and required."  (*Id.*).

Defendants' position is well-taken.  This Court finds that Plaintiffs have not cited to any judicially discoverable and manageable standards that this Court can rely on to determine if, when, and under what circumstances the United States is obligated to evacuate its citizens from dangerous areas overseas.

Plaintiffs point out that, by statute, Congress has directed the Secretary of State to "develop and implement policies and programs to provide for the safe and efficient evacuation of . . . private

9

United States citizens when their lives are endangered." 22 U.S.C. § 4802.  Plaintiffs interpret 22 U.S.C. § 4802 as imposing upon the Executive branch a duty to conduct evacuation operations when U.S. citizens' lives are endangered.  But this statute does not unequivocally impose any such duty upon the Executive branch.  Rather, § 4802 requires the Secretary of State to "develop and implement" certain evacuation-related "policies and programs," while leaving the content of those policies and programs to the Secretary of State's discretion.

More to the point, § 4802 provides absolutely no standards by which this Court could determine whether U.S. citizens' lives are endangered, whether their evacuation would be "safe and efficient," or by what means evacuation should be executed.  Again, § 4802 appears to afford significant discretion to the Secretary of State to make those value determinations. The Court finds that 22 U.S.C. § 4802 does not set forth judicially manageable standards by which Plaintiffs' claims may be resolved.

Executive Order 12656 provides no further guidance.  It simply describes the responsibilities of the Departments of State and Defense in the event of a national security emergency, which may include "protection or evacuation of United States citizens and nationals abroad . . . ."  Exec. Order 12656, 53 FR 47491.  Even still, Executive Order 12656 makes clear that the Secretary of State must carry out its responsibilities "**under the direction of the President** . . . ."  Exec. Order 12656, 53 FR at 47503–04 (emphasis added).  Executive Order 12656 does not require the Secretary of State to independently initiate any evacuation measures, and it certainly does not set forth standards for determining whether evacuation is warranted or feasible.

Nor does the MOA improve Plaintiffs' position.  It sets forth the policies of the Departments of State and Defense, and describes their respective responsibilities *in the event that an evacuation*

10

*is ordered.* However, the MOA does not provide the standards by which the agencies, or this Court, may determine whether evacuation is "necessary and feasible." (MOA at ¶ A).

The Court concludes that Plaintiffs have not cited to any "judicially discoverable and manageable standards" by which to adjudicate the issues in this case. *See Baker*, 369 U.S. at 217. As Defendants aptly pointed out at the hearing, the situation in Yemen is fluid, volatile, and dangerous. Neither Plaintiffs nor this Court have the wherewithal to discover what preparations are necessary before a large-scale evacuation can occur, what the conditions in Yemen are or will be at any given time, or what dangers may be posed to individuals involved in the evacuation effort. Even if all of these factors could be understood to some degree of certainty, the Court still lacks the resources to determine whether evacuation is a prudent measure. These fact-based judgments have been committed to the discretion of the Executive branch, to be made on a case-by-case basis.

Accordingly, based on the characteristics "[p]rominent on the surface of" this case, *Baker*, 369 U.S. at 217, the Court concludes that this case presents nonjusticiable political questions. Therefore, the Court shall GRANT Defendants' Motion to Dismiss.

**2)     Additionally, this Court finds that Plaintiffs have failed to state a valid claim under the Administrative Procedure Act.**

Defendants argue, in the alternative, that Plaintiffs fail to state a claim under the Administrative Procedure Act ("APA") because 1) evacuation decisions are committed to agency discretion, and 2) there has been no reviewable "final agency action." (Defs.' Mo. at 12–18).

Plaintiffs respond that the Executive Order, the MOA, and 22 U.S.C. § 4802(b) "establish that Defendants have a clear and nondiscretionary duty to protect and evacuate U.S. citizens in threatened areas overseas." (Pls.' Resp., Doc. #25 at 16). Plaintiffs assert that Defendants' official

statement that there are no plans for U.S. government sponsored-evacuation of Americans from Yemen constitutes final action on the issue.  (Pls.' Resp. at 23–24).

The APA is a comprehensive statutory scheme governing most aspects of administrative law in the federal system.  Among other things, the APA provides for judicial review of agency actions.  *See* 5 U.S.C. §§ 701–06.  "[B]efore any review at all may be had," however, "a party must first clear the hurdle of § 701(a)."  *Heckler v. Chaney*, 470 U.S. 821, 828 (1985).  Section 701 provides:

> (a) This chapter applies, according to the provisions thereof, except to the extent that–
>
>> (1) statutes preclude judicial review; or
>>
>> (2) agency action is committed to agency discretion by law.

5 U.S.C. § 701(a).

The United States Supreme Court has interpreted § 701(a)(1) as precluding judicial review of agency action "when Congress has expressed an intent to preclude judicial review."  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  In other words, § 701(a)(1) bars judicial review of agency action when an explicit statutory directive so provides.[3]

Section (a)(2), on the other hand, precludes review "even where Congress has not affirmatively precluded review . . . if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Id.*  "In such a case, the statute . . . can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely."  *Id.*

As discussed above, the Court finds that none of the points of authority cited by Plaintiffs

---

[3] For example, this situation is sometimes found in immigration cases, where no court has jurisdiction to review the Attorney General's determination regarding the timeliness of the alien's asylum application.  8 U.S.C. § 1158(a)(3).

provide meaningful standards by which this Court could determine whether or not Defendants have abused their discretion in failing to evacuate U.S. citizens from Yemen. Plaintiffs rely heavily on 22 U.S.C. § 4802, but this statute does not require evacuation in every case, and provides no guidelines for determining when formal evacuation is appropriate. Accordingly, the Court finds that Plaintiffs cannot overcome the § 701(a) "hurdle," and judicial review of the agencies' actions in this case is precluded.

**3)      This Court also finds that Plaintiffs have failed to state a valid Equal Protection claim.**

Defendants also argue, in the alternative, that Plaintiffs have failed to state a claim for relief on equal protection grounds. Specifically, Defendants assert that Plaintiffs' complaint "contains only bald allegations about other, allegedly similarly situated individuals who were treated differently from plaintiffs," which does not satisfy the *Twombly* and *Iqbal* standards of pleading. (Defs.' Mo. at 18–19).

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.,* 470 F.3d 286, 299 (6th Cir. 2006)). The "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Id.*

In their Complaint, Plaintiffs allege that in July of 2006, when Israel "launched a major

13

military assault" on Beirut, Lebanon, the Departments of State and Defense "evacuated nearly 15,000 U.S. Citizens from Lebanon in less than one month . . . ." (Compl. at ¶ 31). Plaintiffs further allege that the State Department has evacuated private U.S. citizens and U.S. officials from Nairobi and Egypt, (Compl. at ¶¶ 32, 33) as well as from Albania, Liberia, Central African Republic, and Vietnam. (Compl. at ¶¶ 35–38). Plaintiffs appear to take the position that Defendants are now refusing to evacuate private U.S. citizens from Yemen due to the "U.S. Government's Policies and Long-Standing Practice of Discriminating Against Americans of Yemeni National Origin." (Compl. at p. 11).

The Court finds that Plaintiffs have failed to adequately plead the "similarly situated" prong of an equal protection claim. Plaintiffs' Complaint is devoid of factual allegations that, if true, would establish that Plaintiffs are similarly situated to the other individuals who the United States has evacuated from other countries. Plaintiffs assert that the United States has implemented evacuation procedures in the past, but have alleged no facts showing that they are similar to previously-evacuated U.S. citizens, or that the current conditions in Yemen are similar to the conditions then-presented in those other countries. Because Plaintiffs have not alleged facts to establish that they have been treated differently than other similarly situated individuals, the Court finds that Plaintiffs have failed to state an equal protection claim.

## CONCLUSION

Based on the foregoing, the Court shall GRANT Defendants' Motion to Dismiss Plaintiffs' Complaint, (Doc. #22), DENY AS MOOT Plaintiffs' Motion for Emergency Motion for Preliminary and/or Permanent Injunction, and Mandamus and Declaratory Relief (Doc. #9), and DISMISS

14

Plaintiffs' Complaint.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  June 8, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 8, 2015, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

15